UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| RICKY J. THURSTON,          ) | |
| ) | |
| Plaintiff,    ) | |
| ) | |
| vs.                                              ) | 2:11-cv-291-JMS-WGH |
| ) | |
| TERRY STEPHENSON,        ) | |
|   JAIL COMMANDER,          ) | |
| ) | |
| Defendant.   ) | |

**Entry Discussing Motion for Summary Judgment**

The parties to this civil rights action are plaintiff Ricky J. Thurston and defendant Terry Stephenson, who is the Jail Commander of the Putnam County Jail ("Jail"). Thurston's claims he was denied constitutionally adequate medical care while he was confined at the Jail and that money was improperly taken out of his inmate account.

Jail Commander Stephenson seeks resolution of Thurston's claim through the entry of summary judgment. For the reasons explained in this Entry, the motion for summary judgment must be granted.

**Summary Judgment Standard**

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 127 S. Ct. 1769, 1776 (2007).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

To survive summary judgment, the nonmoving party must establish some genuine issue for trial such that a reasonable jury could return a verdict in his favor. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 822 (7th Cir. 2011)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmovant will successfully oppose summary judgment only when it presents definite, competent evidence to rebut the motion." *Vukadinovich v. Bd. of Sch. Trs.,* 278 F.3d 693, 699 (7th Cir. 2002) (internal quotation and citation omitted). *See* Fed.R.Civ.P. 56(c)(1)(A),B)(both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.").

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.,* 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.,* 42 F.3d 439, 443 (7th Cir.1994). However, "before a non-movant can benefit from a favorable view of the evidence, it must show that there is some genuine evidentiary dispute." *SMS Demag Aktiengesellschaft v.Material Scis. Corp.*, 565 F.3d 365, 368 (7th Cir. 2009).

Thurston has not opposed the Jail Commander's motion for summary judgment. The consequence of this is that he has conceded Stephenson's version of the facts. *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003) ("[F]ailure to respond by the nonmovant as mandated by the local rules results in an admission."); *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921-22 (7th Cir. 1994). This does not alter the standard for assessing a Rule 56(a) motion, but does "reduc[e] the pool" from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997).

## Applicable Law

"The applicable substantive law will dictate which facts are material." *National Soffit & Escutcheons, Inc., v. Superior Systems, Inc.,* 98 F.3d 262, 265 (7th Cir. 1996) (citing *Anderson,* 477 U.S. at 248). The substantive law applicable to the motion for summary judgment is this:

Pretrial detainees have a right to receive reasonable medical treatment for a serious injury or medical need, including mental health needs. *Sanville v. McCaughtry,* 266 F.3d 724, 734 (7th Cir. 2001); *Collignon v. Milwaukee County,* 163 F.3d 982, 986-87 (7th Cir. 1998). This right is grounded in the Fourteenth Amendment, because the constitutional rights of a pretrial detainee are derived from the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish,* 441 U.S. 520, 535 n.16 (1979). Pursuant to constitutional requirements, a pretrial detainee "may not be punished prior to an adjudication of guilt in accordance with due process of law." *Id.* at 535.

Not all jail conditions trigger constitutional scrutiny. Only deprivations of "basic human needs," including adequate food, clothing, shelter, medical care, sanitation, and physical safety, or lack of the "minimal civilized measure of life's necessities," rise to that level. *See Sanders v. Sheahan*, 198 F.3d 626, 628 (7th Cir. 1999); *Tesch v. County of Green Lake,* 157 F.3d 465, 475 (7th Cir. 1998); *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996). "The conditions of imprisonment, whether of pretrial detainees or of convicted criminals, do not reach even the threshold of constitutional concern until a showing is made of 'genuine privations and hardship over an extended period of time.'" *Duran v. Elrod,* 760 F.2d 756 (7th Cir. 1985) (quoting *Bell v. Wolfish*, 441 U.S. at 542).

Under the Due Process Clause, the standard with respect to the right to safe conditions of confinement is whether the defendant acted with deliberate indifference towards the plaintiff by ignoring a known and substantial risk to the inmate's safety. *Butera v. Cottey,* 285 F.3d 601, 605 (7th Cir. 2002); *see also Payne v. Churchich,* 161 F.3d 1030, 1041 (7th Cir. 1998) ("A detainee establishes a § 1983 claim by demonstrating that the defendants were aware of a substantial risk of serious injury to the detainee but nevertheless failed to take appropriate steps to protect him from a known danger."). Deliberate indifference requires a showing of two elements in this setting. *Palmer v. Marion County,* 327 F.3d 588, 593 (7th Cir. 2003). First, a detainee must "objectively show that he was incarcerated under conditions posing a 'substantial risk of serious harm.'" *Id.* (quoting *Farmer v. Brennan,* 511 U.S. 825, 834 (1994)). Second, a detainee must establish that the defendant had "knowledge of and disregarded the risk to his safety.*" Id.* (citing *Farmer,* 511 U.S. at 837 ("[A] prison official cannot be found liable . . . unless the official knows of and disregards an excessive risk to inmate health or safety.")).

## Material Facts

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Walton as the non-moving party. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

### *Thurston's Medical Care*

Thurston was admitted to the Putnam County Jail in October 2009. During the time Thurston was at the Putnam County Jail, the Sheriff of Putnam County contracted with Advanced Correctional Healthcare to provide medical care to inmates. All decisions regarding inmate prescriptions and medical care were made by Advanced Correctional Healthcare, not by the sheriff or any of his employees. All inmate requests for medical attention, or grievances related to medical care, were forwarded by the jail staff to the jail nurse April Rogers and jail doctor Jeffery Quillen, for any relevant response and information. Sometimes these would be answered directly by the nurse and doctor, sometimes information conveyed to jail staff.

Terry Stephenson was employed by the Putnam County Sheriff as the jail commander with the rank of major. He sometimes reviewed grievances. Stephenson did not make policy or written rules for the jail staff. Those functions were performed by the sheriff of Putnam County. Stephenson had nothing to do with medical care decisions. He made no policies or procedures in any area. All policies and procedures were written by the sheriff, and Advanced Correctional Healthcare had its own written protocols.

On March 18, 2010, Stephenson responded to the sole medical grievance which he received from Thurston. In that grievance, Thurston complained about trust money being taken for his medications by April Rogers, who he says took him off his medications along with taking his money and about not receiving an MRI he requested. Stephenson never met Thurston, but upon receiving this medical request, he reviewed it with the jail medical staff, including Dr. Quillen and nurse Rogers. His response is exactly what he was told by the medical staff; he had no other information. His response was that the doctor had taken Thurston off pain and sleep medications, and the doctor advised that Thurston could get an MRI when he got out of jail, and "this facility follows the jail doctor's orders." Terry Stephenson never gave any orders or directives to either Dr. Quillen or April Rogers regarding the medical care and treatment of Ricky Thurston.

*Thurston's Imate Account*

Stephenson had no responsibilities relating to inmates' accounts at the jail. He had no custody or control over them, did not debit or credit them, and did not make or keep any records relating to them. Thurston alleges that Rogers, not Stephenson, took his money.

**Analysis**

The details of Thurston's medical care at the Jail are not provided, nor would they be material, given that Jail Commander Stephenson was neither directly involved in that care nor responsible for the decisions of the medical professionals. Because individual liability under ' 1983 depends on personal involvement in the alleged wrongdoing, *Zimmerman v. Tribble,* 226 F.3d 568, 574 (7th Cir. 2000) (A' 1983 does not allow actions against individuals merely for their supervisory role of others.@), the fact that Stephenson had no direct participation in Thurston's care is fatal to the claim. *Sanville v. McCaughtry,* 266 F.3d 724, 740 (7th Cir. 2001) (to be liable for the deprivation of a constitutional right, an individual must personally participate in the deprivation or must direct the conduct or have knowledge of or consent to the conduct). This is especially true here, where Thurston was being cared for by medical experts.

> If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands. This follows naturally from the

>  division of labor within a prison. Inmate health and safety is promoted by dividing responsibility for various aspects of inmate life among guards, administrators, physicians, and so on. Holding a non-medical prison official liable in a case where a prisoner was under a physician's care would strain this division of labor.

*Spruill v. Gillis,* 372 F.3d 218, 236 (3d Cir. 2004); *see also Hayes v. Snyder,* 546 F.3d 516, 527 (7th Cir. 2008)("The policy supporting the presumption that non-medical officials are entitled to defer to the professional judgment of the facility's medical officials on questions of prisoners' medical care is a sound one."). Accordingly, Stephenson's motion for summary judgment is granted as to his deliberate indifference claim.

Similar reasoning applies to Thurston's claim regarding his inmate account—namely, as Thurston himself admits, Stephenson had no involvement in the maintenance of Thurston's account. Without personal involvement, there can be no liability. *Zimmerman,* 226 F.3d at 574. Stephenson's motion for summary judgment must be granted on this claim as well.

## Conclusion

The party opposing a summary judgment motion bears an affirmative burden of presenting evidence that a disputed issue of material fact exists. *See Wollin v. Gondert,* 192 F.3d 616, 620 (7th Cir. 1999). If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Ortiz v. John O. Butler Co.,* 94 F.3d 1121, 1124 (7th Cir. 1996). The only conclusion supported by the evidentiary record is that Jail Commander was not deliberately indifferent to Thurston's serious medical needs while Thurston was confined in the Jail and did not improperly manage his inmate account. Jail Commander Stephenson's motion for summary judgment [41] is therefore **granted**.

Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: _10/15/2012_____

_____
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

**Ricky J. Thurston**
**DOC 901822**
**Wabash Valley Correctional Facility**
**6908 S. Old U.S. Highway 41**
**P.O. Box 1111**
**Carlisle , IN 47838**

**Michael Roy Morow**
**STEPHENSON MOROW & SEMLER**
**mmorow@stephlaw.com**